## INHABITANTS OF FRANKFORT *versus* INHABITANTS OF WINTERPORT.[*]

An original town, a part of the territory of which has been set off and incorporated as a new town, still retains all its property, powers, rights and privileges, and remains subject to all its obligations and duties, unless otherwise provided in Act authorizing the separation.

An Act of separation providing that the "town farm" of the original town "shall belong to" the new town, does not transfer the personal property being on the "town farm," belonging to the original town.

By § 2,[†] c. 422, of Special Laws of 1860, the right of collecting the "unpaid taxes" of the original town was retained therein.

The words "and for other necessary town charges," as used in R. S., c. 3, § 26, authorize towns to employ a reasonable number of agents or attorneys to advance or protect the rights of the former, before any legally constituted tribunal; they do not authorize a town to raise and expend money to send lobyists to the Legislature.

ON FACTS AGREED.

ASSUMPSIT, to recover certain sums of money, under Special Laws of 1860, c. 422, § 2.

*W. G. Crosby,* for the plaintiffs.

*N. H. Hubbard,* for the defendants.

CUTTING, J. — This case is presented on facts agreed, and depends upon the construction of § 2 of an Act to incorporate the town of Winterport, c. 422, passed in 1860. That section is as follows : —

"The inhabitants of Winterport shall pay all unpaid taxes legally assessed on them by the town of Frankfort; and all indebtedness and liabilities of Frankfort, and all claims and demands against it, in suit or otherwise, shall be shared and paid equally, by said two towns; and the town farm of Frankfort shall belong to the town of Winterport, but the town house, town safe, and all other town property shall belong to Frankfort."

---

[*] This case has just come into the hands of the present Reporter.

[†] See opinion.

The old town of Frankfort, notwithstanding a part of its territory was set off and incorporated as a new town, "still retains all its property, powers, rights and privileges, and remains subject to all its obligations and duties, unless some new provision should be made by the Act authorizing the separation." *Windham* v. *Portland*, 4 Mass., 384, cited in *North Yarmouth* v. *Skillings*, 45 Maine, 133.

In this case, a new provision was made, divesting Frankfort of the town farm, but not of the personal property remaining thereon, which would no more be transferred by the Act than a deed of a farm would carry with it all the personal property of the grantor, which remained upon it at the time of such conveyance. Nor has the ancient town been deprived of the right to collect the unpaid taxes, but wholly otherwise by the very language of the Act.

Again, it appears that, in 1859 and 1860, Frankfort, before its separation, called public meetings, passed sundry resolutions unfriendly to the anticipated division, and voted to send twenty delegates, more or less, to the Legislature to oppose the contemplated project; for those services Frankfort has paid, a part before and the balance since the separation. Now by the plaintiffs it is claimed, that they should be reimbursed for one half of the money so expended; whereas the defendants not only object to the justice and legality of the whole claim, but contend that they are entitled to recover by the way of offset one half of that sum as money unlawfully collected and appropriated.

This, at first view, presents a question of a "novel impression," which is, whether a town in its corporate capacity by force of those words in the statute, "and for other necessary town charges," can legally raise and expend money in order to send lobby members to the House of Representatives. We frequently hear of such persons in attendance, but had always supposed it was either at their own expense or that of their friends, and are still of that opinion. At the same time, we wish by no means to be understood as overruling the doctrine of the case of *Bachelder* v. *Epping*, 8 Foster,

534. Undoubtedly all corporations, and towns, as *quasi* corporations, may use all lawful means to advance or protect their rights before any legally constituted tribunal, and for that purpose may employ agents or attorneys, but are restricted to a reasonable number. An assault by storm can be justifiable only in case of war, a *casus belli* before war is proclaimed will not permit it.

Consequently, while the plaintiffs have no legal claim for reimbursement, neither have the defendants for moneys paid before their corporate existence.

We have not been furnished with a copy of the writ, and cannot predict what effect this opinion may have in terminating the suit. It may embrace other claims. Therefore the action must stand for trial, unless otherwise disposed of by the parties. Interest from demand, if any was made, otherwise from the date of the writ.

*Action to stand for trial, or, according to*
*the agreement of the parties, an auditor is*
*to be appointed, if either party request it.*

APPLETON, C. J., KENT, WALTON and DANFORTH, JJ., concurred.