[No. 13798.  *En Banc.*  November 4, 1916.]

THE STATE OF WASHINGTON, *on the Relation of the Port of Seattle et al., Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *Edward H. Wright, Judge, Defendant.*[1]

MUNICIPAL CORPORATIONS — POWERS — PORT DISTRICTS — DISBURSEMENT OF FUNDS—POLITICAL USE—STATUTES. Under the port district act (Rem. 1915. Code, § 8165-1 *et seq.*) authorizing the creation of port districts in the nature of a municipal corporation to engage in the business of building wharves, docks and harbor improvements and of operating and maintaining them, the Port of Seattle has no implied authority to spend money in a political campaign to defeat the passage of an act referred to the voters at a general election; since the district has only such power as is expressly conferred, or fairly incident to, and can be reasonably implied from, the powers granted, and such delegation of power cannot be presumed.

Certiorari to review an order of the superior court for King county, Edward H. Wright, J., entered October 18, 1916, enjoining the expenditure of funds of the port commission for political purposes, after a hearing before the court.   Affirmed.

*C. J. France*, for relators.

*Halverstadt & Clarke* and *W. M. Whitney*, for defendant.

MOUNT, J.—This is a proceeding to review an order of the lower court granting an injunction in the case of C. O. Qualheim, Plaintiff, v. The Port of Seattle and Robert Bridges, C. E. Remsberg and Carl A. Ewald, as port commissioners of the Port of Seattle, Defendants.

The plaintiff in that case alleged that the legislature, in 1915, enacted a law amending the port district act of this state, being chapter 46 of the laws of that year. Laws 1915, p. 148 (Rem. 1915 Code, § 8165-15 *et seq.*). This amendment increased the number of port commissioners, and limited the bonded indebtedness of port districts of the first class.

[1]Reported in 160 Pac. 755.

It is alleged that the port commissioners, for the purpose of defeating that enactment, are attempting to secure a nullification thereof by means of a referendum, and, for that purpose, the port commissioners have wrongfully, unlawfully, and without authority, expended large sums of the funds of said port district for the purpose of advertising, lobbying, and printing circulars, which have been scattered over King county and a considerable portion of the state; that the port commissioners, unless restrained from so doing, will expend other large sums of port funds for the purpose of carrying on a political campaign against said chapter 46; and that, by reason of said unlawful expenditures, the rate of taxation in King county will be increased, and the taxpayers of King county will be compelled to repay the money so unlawfully expended. It is also alleged that the plaintiff is a resident and taxpayer of King county. An application was made to the court below for a restraining order. After a hearing upon that application, the superior court of King county, on the 18th day of October, entered an order enjoining the defendant Port of Seattle and the port commissioners, their agents and servants, from expending, or causing to be expended, any of the funds of the Port of Seattle for the purpose of defeating the operation and effect of chapter 46 of the Laws of 1915, p. 148 (Rem. 1915 Code, § 8165-15 et seq.). This writ is to review that order.

The amendment to the port district act, being chapter 46 of the Laws of 1915, p. 148, was made the subject of a referendum under the constitution. It is now designated as referendum measure No. 8, to be printed on the official ballot, to be approved or rejected at the general election on November 7th of this year. By reason of the reference, this chapter has not yet become a law. This amendment is intended to increase the board of port commissioners from three to seven members, and provides that the total bonded indebtedness of any port of the first class shall be limited to two and one-fourth per cent of the assessed valuation of taxable property

in said district, but in no event shall the total bonded indebtedness ever exceed the sum of $5,750,000.

The question presented is whether the board of port commissioners is authorized to expend public funds, raised by taxation, to defeat proposed legislation affecting that corporation. It is contended by the relators that, while the Port of Seattle is a municipal corporation, it is also a business corporation, and has the power to expend the money of the corporation to the best interest thereof. It is not contended, as we understand the brief of the relators, that there is any express provision in the law authorizing the port commission to expend money belonging to the corporation for political purposes; but it is argued, in substance, that, because this corporation is in the nature of a business corporation, engaged in commercial enterprises in competition with private individuals engaged in similar enterprises, and is conducting such business as an agency of the state, it has a right to expend its moneys in such way as the port commissioners deem for the best interest of the corporation; that, inasmuch as the powers of the corporation are general in their character, the power is implied to the trustees to apply the money of the corporation as, in their opinion, will best promote the affairs of the corporation. There can be no doubt that a corporation exercising powers of the state possesses only those powers expressly granted or such as are necessarily implied. The general rule is stated by Dillon on Municipal Corporations, at § 89, as follows:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. . . ."

In the case of *Tacoma Gas & Elec. Light Co. v. Tacoma*, 14 Wash. 288, 44 Pac. 655, this court said:

"It is a well settled rule of construction that a delegation of powers will not be presumed in favor of a municipal corporation unless they be such as are necessary to its corporate existence, but that the same must be clearly conferred by express statutory enactment. . . ."

And in *Young v. State*, 19 Wash. 634, 54 Pac. 36, this court said:

"It is well settled that public officers have, and can exercise, only such power as is conferred upon them by law, either statutory or constitutional, and that the government is not bound by the unauthorized acts of its officers or agents."

See, also, *Smith v. Lamping*, 27 Wash. 624, 68 Pac. 195; *Farwell v. Seattle*, 43 Wash. 141, 86 Pac. 217. In this latter case, it is said:

"A municipal corporation is limited in its powers to those granted in express words, or to those necessarily or fairly implied in or incident to the powers expressly granted, and also to those essential to the declared objects and purposes of the corporation. 1 Dillon, Mun. Corp. (4th ed.), § 89; . . . It is a general principle that a municipal corporation cannot usually exercise its powers beyond its own limits, and if in any case it has authority to do so, it must be derived from some statute which expressly or impliedly permits it. *Coldwater v. Tucker*, 36 Mich. 474, 24 Am. Rep. 601. The doctrine of *ultra vires* is applied with greater strictness to municipal bodies than to private corporations. 1 Smith, Modern Law of Corp., § 661. Upon this subject the supreme court of Minnesota has said:

" 'A different rule of law would in effect vastly enlarge the power of public agents to bind a municipality by contracts not only unauthorized but prohibited by the law. It would tend to nullify the limitations and restrictions imposed with respect to the powers of such agents and to a dangerous extent expose the public to the very evils and abuses which such limitations are designed to prevent.' . . ."

It is plain from these authorities that, unless the Port of Seattle may be fairly implied to have the power to expend

money in the way here proposed, it has no such authority.  It is not claimed that there is any express provision authorizing the Port of Seattle to expend money as is here attempted. The powers of the corporation, as defined by the act creating it, chapter 62 of the Laws of 1913, p. 202, are general in their character.  They are stated as follows:

"To lay out, construct, condemn, purchase, acquire, add to, maintain, conduct, and operate any and all systems of seawalls, jetties, wharves, docks, ferries, canals, locks, tidal basins and other harbor improvements, rail and water transfer and terminal facilities within such port district."  Laws 1913, p. 210, § 4 (Rem. 1915 Code, § 8165-4).

The port commissioners have, no doubt, implied authority to spend the money of the port for any of these purposes, but clearly the purpose for which this money is being spent is not, and cannot be, reasonably implied from the powers named. This corporation, the Port of Seattle, is a creature of the state.  It is in the nature of a municipal corporation engaged in the business of building wharves and docks and harbor improvements and in operating and maintaining the same.  Its powers are given by the state.  If the state desires to limit those powers, the port itself and its commissioners have no special interest therein.  They are simply agents of the state, and it seems absurd to say that an agent of the state may be permitted to expend money of the state for the purpose of defeating a proposed curtailment of the powers of that corporation by the state.  No such power is expressly granted to the corporation, and it is not a necessarily or fairly implied incidental power to those expressly granted. It may be convenient for the port and the port commissioners to desire no change in its powers, but the curtailment of these powers, as is proposed, is clearly not indispensable, and for that reason alone the courts ought not to construe in favor of such corporations the power here sought to be exercised. In *James v. Seattle,* 22 Wash. 654, 62 Pac. 84, 79 Am. St.

957, this court held that the city of Seattle had no power to pay the expenses of councilmen on a visit to other cities to inform themselves concerning waterworks, street paving, terminal facilities, street lighting and other municipal matters. We there said:

"And we think the rule thus announced is the established one, and in consonance with all sound authority. The members of the city council are trustees. The body holds a trust for the inhabitants of the city. The terms of the trust are fixed by legislation, and no expenditure of money belonging to the city can be made without express authority, or implied authority by reason of a necessary granted power."

See, also, *Minot v. West Roxbury*, 112 Mass. 1, 17 Am. Rep. 52; *Coolidge v. Brookline*, 114 Mass. 592; *Frankfort v. Winterport*, 54 Me. 250; *Westbrook v. Deering*, 63 Me. 231; *Henderson v. Covington*, 77 Ky. 312; *State ex rel. Clausen v. Burr*, 65 Wash. 524, 118 Pac. 639. In this last named case, it was said:

"The question of local self-government is one which has engaged the attention of the courts since the formation of the Union. A few states have adopted the view that the municipalities have an inherent right to local self-government not dependent upon legislative authority, and that this right was brought to this country from the rule adopted in the Anglo-Saxon countries from which our laws descended. This view is entertained by the courts of Indiana, Kentucky, and Michigan; while practically all the rest of the jurisdictions hold that municipal corporations have only such power as is conferred upon them by the legislature, and that the legislature, in the absence of constitutional inhibition, controls such municipalities absolutely. This is the view of the supreme court of the United States, which, in *Barnes v. District of Columbia*, 91 U. S. 540, held in substance that a municipal corporation was but a department of the state, and that the legislature could give it all the powers it was capable of receiving, or that it might deprive it of every power, leaving it a corporation in name only, and could create and recreate changes in its government as it chose. In addition to the overwhelming weight of authority, this is the

view that has been taken by this court.  In *Meehan v. Shields*, 57 Wash. 617, 107 Pac. 835, in discussing the constitutionality of the state aid road law and in commenting thereon, it was said:

" 'Our constitution is a limitation of power, and such rights and powers of local government as are not conferred upon counties by the language of the constitution remain with the state and may be exercised by the legislature as the lawmaking power of the state.  Rules and regulations for local county government and control, except as otherwise provided for in the constitution, are as much within the control of the state as those matters which are more general and statewide.' "

We are of the opinion, therefore, that the Port of Seattle and its commissioners have not authority to expend the money of the corporation in an endeavor to defeat any law which has been passed by the legislature and referred to the people for approval or rejection.  The approval or rejection of the amendment proposed to the Port of Seattle is a matter of no concern to the port itself, or its commissioners.  As stated above, this corporation is a branch of the state government, municipal in its character, and its authority is limited to the powers expressly granted or necessarily inferred from express grants.  If the port commissioners may take the money of the port, acquired by taxation upon property within the district or otherwise, for political purposes, or purposes other than those for which the port was organized, then there is no limit upon the port commissioners in expending the money of the port.  The commissioners might determine that the best interests of the business of the port required that the individual members of the commission be perpetuated in office, and, because of that reason, use the funds of the port to insure their own election.  We are clearly of the opinion that, when the port was created, no thought was held by any person that the money raised by the port could be used for political purposes, or any purpose other than for the direct use of the port and its business.

We find no error of the lower court in granting the injunction. The order is therefore affirmed.

MORRIS, C. J., MAIN, ELLIS, HOLCOMB, CHADWICK, and PARKER, JJ., concur.