[No. 17625.   Department Two.   May 11, 1923.]

THE STATE OF WASHINGTON, *on the Relation of L. M. Rice, Appellant,* v. FRANK T. BELL, *Respondent.*[1]

CONTRACTS (41)—MUNICIPAL CORPORATIONS (513)—WARRANTS— VALIDITY — PUBLIC POLICY — INFLUENCING LEGISLATION. It being against public policy to use public money to influence the action of, representatives either in Congress or the legislature, a warrant drawn on the funds of an irrigation district in payment of expenses and services to secure the passage of an irrigation bill by Congress is void and its payment will be enjoined.

MANDAMUS (60)—MUNICIPAL CORPORATIONS (516)—WARRANTS— REMEDIES—DEFENSES—PLEADING. In mandamus to compel the issuance of a warrant, an answer alleging that the warrants were to reimburse plaintiff for expenses in working for the passage of an Act of Congress, sufficiently raises the issue as to their legality.

Appeal from a judgment of the superior court for Grant county, Hill, J., entered May 23, 1922, dismissing an action to compel the payment of warrants issued

[1]Reported in 215 Pac. 326.

by an irrigation district, after a trial to the court. Affirmed.

*William M. Clapp* and *Hartman & Hartman,* for appellant.

*The Attorney General, Fred J. Cunningham, Assistant,* and *N. W. Washington,* for respondent.

FULLERTON, J.—The appellant, L. M. Rice, was, in 1915 and 1916, employed as engineer for the Quincy Valley Irrigation District, a public irrigation district of Grant county. In December, 1915, pursuant to a resolution by the directors of the district, he attended the Western States Irrigation Congress at San Francisco, to work for and interest that conference in a bill pending before the Congress of the United States, known as the "Jones Bill," the passage of which it was thought would be of great benefit to the district. On December 22, 1915, a warrant for $100 was issued to him for "expenses to San Francisco to attend Western Reclamation Congress and donation to secure passage of the Jones bill," and on February 28, 1916, a warrant for $300 was issued to him for "contribution to Western States Reclamation Conference for Jones bill." Each of the warrants, at the time of its issuance, was presented to the county treasurer, as ex-officio treasurer of the district, and was stamped "not paid for want of funds." On April 26, 1917, there were sufficient funds to the credit of the district to pay these warrants, but the respondent, when they were presented for payment, refused to pay them upon the advice of the state's *Attorney General;* the matter having been called to the attention of that officer in the manner provided by law by the bureau of inspection and supervision of public offices, following an examination of the records of the district.

This proceeding was instituted by affidavit filed in the superior court of Grant county on April 21, 1922, seeking a peremptory writ of mandamus compelling the payment of the warrants. In the affidavit the issuance of the warrants is averred, likewise their presentation for payment and their stamping "not paid for want of funds," and it is averred that there was, and had been since April, 1917, sufficient funds to the credit of the district to pay the warrants in full, but that the respondent refused payment for the reason that "payment had been ordered stopped by the Board of Inspection of the State of Washington." The respondent answered, setting up extracts from the report of the bureau relating to these particular warrants, and also letters received from the *Attorney General* advising him to refuse payment on the warrants. Following a trial, the court below dismissed the action.

The appellant's first contention is that the affirmative matter in the respondent's answer did not constitute a defense to the action, as it merely set out the findings of the bureau and the opinion of the Attorney General. However, the answer does set out that the warrants were issued for the purpose of reimbursing the appellant for expenses and contributions in working for the passage of an act of Congress, and the proof showed such to be the fact, and the legality of the warrants issued for that purpose was the issue and the only issue tried. While the pleadings are not happily drawn, they are sufficient to raise the issue presented.

The next contention is that the directors of the district were authorized to pay the appellant for his expenses in work of this kind, and that the warrants were therefore legal and valid. The irrigation district was organized under the provisions of § 7417 *et seq.* of Rem. Comp. Stat. [P. C. § 3197].

Section 7459 [P. C. § 3235], so far as material, reads:

"The board of directors or other officers of the district shall have no power to incur any debt or liability whatsoever either by issuing bonds or otherwise in excess of the express provisions of this chapter; . . ."

It is not contended that the district is expressly authorized to hire a person to secure favorable action upon legislation before Congress, but it is said this power impliedly rests in its directors. With this we cannot agree. It is our opinion that the attempted expenditure of public funds was illegal. In *Hartson v. Dale*, 9 Wash. 379, 37 Pac. 475, we held that county commissioners were not authorized to pay the expenses of a member of the board incurred in attending a meeting of the state board of equalization. Therein it is said:

"It is no part of the duty of a commissioner, which is imposed by the law, to visit the state board of equalization in the capacity of a lobbyist in the interests of the county, or in any other capacity; and the law very wisely provides that in the incurring of all such expenses as those incurred in this case by the commissioner, if it could be legally incurred at all—a question upon which it is not now necessary to pass—that a disinterested tribunal should pass upon the amount which such services were worth."

Again, in *James v. Seattle*, 22 Wash. 654, 62 Pac. 84, 79 Am. St. 957, we pointed out that a city council was without authority to reimburse certain of its members for expenses incurred in visiting other cities for the purpose of investigating the management of public utilities. Other states have likewise placed the stamp of illegality on such attempted expenditures. *Henderson v. Covington*, 14 Bush (Ky.) 312; *Westbrook v. Deering*, 63 Me. 231; *Mead v. Inhabitants of Acton*, 1

N. E. (Mass.) 413; *Irwin v. County of Yuba,* 119 Cal. 686, 52 Pac. 35.

In the last cited case, the expenses sought to be reimbursed from public funds were incurred in attending a meeting of the State Anti-Debris Association. The court used the following apt language in condemning the expenditures:

"It is common history that like associations have been formed in the mining counties (we may presume, with equally sincere motives) to resist the efforts made by this very anti-debris association, and under claims that the deposit of debris in the streams named is and was by right, and that great harm would come by preventing such deposit. If plaintiff's contention be correct, we should have the public funds of one county used to prevent the consummation of an object which the funds of another county were being used to promote, and both claiming under the same general law. Such a result cannot be permitted in the absence of positive and clear statutory authority."

Obviously, to permit public moneys to be used in an effort to influence the action of representatives of the people, whether in Congress or in the legislature, is contrary to sound public policy, and in the absence of express statutory authorization, no such authority will be implied.

The judgment is affirmed.

MAIN, C. J., TOLMAN, PEMBERTON, and MACKINTOSH, JJ., concur.