[No. 19066.  Department One.  August 20, 1925.]

PORT OF SEATTLE, *on the Relation of John H. Dunbar, Appellant,* v. GEORGE B. LAMPING, *Respondent.*[1]

MUNICIPAL CORPORATIONS (111)—POWERS—PORT DISTRICTS—DISBURSEMENT OF FUNDS — POLITICAL USE — INFLUENCING LEGISLATION. The Port of Seattle has no power to expend public money for propaganda to influence legislative action, although directed openly and without corrupt intent or motive and of great benefit and value to the business of the Port; and can not contract to pay for services rendered in that behalf by one who may have been sent for by the legislature for the purpose, in view of Rem. Comp. Stat., § 8187, giving the legislature power to summon and pay fees for any one so attending.

Appeal from a judgment of the superior court for King county, Hon. Charles E. Claypool, judge *pro*

[1]Reported in 238 Pac. 615.

*tempore,* entered November 18, 1924, upon findings in favor of the defendant, in an action on contract, tried to the court. Reversed.

*The Attorney General* and *E. W. Anderson,* for appellant.

*Bradford & Snyder,* for respondent.

Tolman, C. J.—Appellant, as plaintiff, brought this action to recover from the defendant the sum of $502.06, paid to him as a commissioner of the Port of Seattle, for so-called legislative expenses during the biennial session of the state legislature in 1921, the complaint, among other things, alleging:

"That the payment of said sum of $502.06 out of the general fund of the Port of Seattle, as reimbursement for legislative expenses was unlawful, and that the defendant has received funds of the Port of Seattle to which he was not legally entitled by reason of the facts aforementioned, and that there is now due and owing to the Port of Seattle the sum of $502.06, together with interest at the rate of six per cent. from May 17, 1921; that plaintiff has demanded that the sum of $502.06 be paid to the Port of Seattle, but that defendant has refused to return said sum or any portion thereof."

A demurrer to the complaint was overruled, certain affirmative answers were filed, which on motion were stricken, issues were raised by an amended answer to the complaint, and the cause was tried to the court sitting without a jury. After hearing all of the testimony offered, findings of fact were made by the court, which, omitting formal parts, read as follows:

"I.    That the Port of Seattle was, during all the times herein mentioned, a municipal corporation organized and existing under and by virtue of the laws of the said state; that said John H. Dunbar is the duly elected and acting and qualified attorney-general of said state; and that George B. Lamping is the duly

elected, qualified and acting commissioner of said Port of Seattle and was such at all the times herein mentioned.

"II. That, prior to the convening of the session of the legislature of said state in 1921, the port commissioners of the several ports of said state had several meetings at which they discussed the various matters relating to general port business and operations and certain changes in the laws relating thereto, which seemed necessary and vital to the welfare of said port and the people therein, and they prepared what is referred to in the evidence herein as the 'Legislative Program,' consisting of several amendments to the then existing port acts and laws, and that the port commission of the Port of Seattle, at a regularly called meeting thereof, held on the 10th day of January, 1921, unanimously adopted a resolution directing and authorizing said defendant to take full charge of said suggested changes in the laws and give the legislature such information and data as he had in his possession; and that, pursuant to said resolution and to the requests and summons from the various committees of both the House and Senate of the said legislature of said state, in the said session of 1921, defendant appeared many times thereat and gave said committees such data and information as he then had touching upon the suggested changes in the said laws and acts relating to port matters and the business of the ports; that all of the matters and data herein referred to were of great importance to the Port of Seattle and to its business and related solely thereto; that the legislature acted upon and accepted such data and made such changes in the law; that the change relating to the sale of bonds of the port in one case alone saved the Port of Seattle over fifty thousand dollars ($50,000); that the change with reference to the matter of the 2% interest on deposits has already saved the port over nine thousand dollars ($9,000); and that the other changes have proven equally beneficial to said port and to its business operations; that relative to the change in said bond law, prior thereto the said port could not as a rule secure more than from 80 to 84% on its offered

bond issues, whereas since the said change it usually secures bids thereon above par, which is chiefly due to the said change. That all the trips and the work to and at Olympia were made and done solely in connection with said port matters and the helping said committees.

"III. That, for over a quarter of a century, it has been a general and universal custom in said state for various public officials representing the school districts, state university, cities and other municipal corporations, to attend upon the sessions of the legislature and its said committees and furnish them data and information and aid them in their work, and the same custom and practice has prevailed therein with reference to the ports of said state ever since the port laws were first passed in 1911.

"IV. That all of said trips made by defendant were proper and none of them were what is generally known in the law and in American political life as 'junketing' trips. That the work defendant did at Olympia was proper, and that he did not indulge in what is popularly known in the law and in the American political life as 'lobbying' in any sense as usually understood. That all said trips and all said work were connected solely with and related solely to the business of the Port of Seattle and not otherwise. That the said port commission and said commissioners, including defendant, at all the times herein set forth acted in the best of faith, and in the belief that they had a legal right to do what they and each of them did in the premises. That defendant at all times acted for and on behalf of said commission and port district and solely relative to said matters above referred to, and not otherwise; and that some of the expenses incurred, mentioned in the complaint herein, were for some of the other commissioners of said Port of Seattle, in connection with said work at Olympia.

"V. That all of the $502.06 set out in the complaint were expenses and costs solely in connection with said trips and said work and were all necessary and incident thereto; that defendant, in the usual course of port business, rendered his bills and voucher therefor, paid

out said sum as aforesaid, that the same were duly presented to the auditor of said port, duly audited, allowed and accepted by said Port of Seattle through its proper officers; that all said expenses were incurred and defendant was fully reimbursed therefor on or before the 5th day of May, 1921. That said sum was reasonable and just as such expenses and proper to allow the same by the port.''

Whereupon a judgment was entered dismissing the action with prejudice, and the *Attorney General* prosecutes this appeal.

Practically every question here raised has been previously passed upon by this court in *State ex rel. Port of Seattle v. Superior Court,* 93 Wash. 267, 160 Pac. 755, L. R. A. 1917B 354, and the opinion in that case might be quoted *in extenso* as fully answering all of the respondent's contentions; but to do so would be an unnecessary waste of space and printer's ink. The following brief extract must suffice:

''This corporation, the Port of Seattle, is a creature of the state. It is in the nature of a municipal corporation engaged in the business of building wharves and docks and harbor improvements and in operating and maintaining the same. Its powers are given by the state. If the state desires to limit those powers, the port itself and its commissioners have no special interest therein. They are simply agents of the state, and it seems absurd to say that an agent of the state may be permitted to expend money of the state for the purpose of defeating a proposed curtailment of the powers of that corporation by the state. No such power is expressly granted to the corporation, and it is not a necessarily or fairly implied incidental power to those expressly granted.''

The only difference we can discover between the two cases is that in the former case the acts complained of consisted of attempts to educate, inform and influence the voters in passing upon a referred measure at a

general election, while here the propaganda was directed (openly and without corrupt intent or motive, as found by the trial court) at the representatives of the people in legislature assembled; a distinction wholly without a difference, the principle being absolutely the same.

If anything more in the way of authority is needed, it will be found in the recent case of *State ex rel. Rice v. Bell,* 124 Wash. 647, 215 Pac. 326, which should put the question at rest until the legislature sees fit to provide authority for what it may consider legitimate expenditures in such cases. And in this connection, since respondent urges, and the trial court found, that he was to some extent sent for by the legislature, it may be noted that the legislature has, by §§ 8178 to 8195, inclusive, of Rem. Comp. Stat. [P. C. §§ 3583, 6622], given the presiding officer of any committee of either house, or of any joint committee, authority to send for persons and to issue process for the attendance of witnesses; and by § 8187 mileage and *per diem* are provided to be paid to anyone so attending. This, we think, excludes any other method of compensation so far as municipal officers are concerned.

While respondent does not raise the question in this court, we are satisfied that the three-year statute of limitations applies and we are convinced that the judgment as entered by the trial court was erroneous.

Judgment reversed with directions to enter judgment in favor of appellant as prayed for.

MAIN, PARKER, BRIDGES, and ASKREN, JJ., concur.