[No. 822.   Decided June 20, 1893.]

THE SPOKANE STREET RAILWAY COMPANY, *Appellant*, v. THE CITY OF SPOKANE FALLS, CHARLES F. CLOUGH, M. M. SWINGLER AND CITY PARK TRANSIT COMPANY, *Respondents*.

MUNICIPAL CORPORATIONS — FRANCHISE FOR STREET RAILWAY — ESTOPPEL — UNAUTHORIZED TRACKS — ABATEMENT AS NUISANCE.

Where a street railway company, under an ordinance granting it a right to lay tracks in certain streets, lays and operates in connection with such system a track upon a street not named in its franchise, the city is estopped to interfere therewith, when it had knowledge thereof through its officers, the tracks, in fact, being laid under the direction of its superintendent of streets, and the company had, for several years, operated its railway thereon without objection, and paid taxes assessed upon the property by the city.

Where a street railway company holds a franchise to operate a cable railway upon certain streets, through compliance with the absolute conditions contained in the grant, but operates a horse railway instead of a cable railway upon one of the streets, the proper course for the city is, not to abate such horse railway as a nuisance, but to take such legal proceedings as will compel the operation of the road by cable instead of by horses.

Although a street railway track constructed without authority may be technically a nuisance, yet where there is no general law of the city declaring such railway a nuisance and authorizing its abatement, the city is not authorized, under a charter provision empowering it "to cause any nuisance to be abated," to tear up such street railway track..

*Appeal from Superior Court, Spokane County.*

*Turner & Graves*, and *F. T. Post*, for appellant.

*P. F. Quinn*, and *W. C. Jones*, for respondents.

The opinion of the court was delivered by

STILES, J. — The appellant brought an action against the respondents to prohibit them from interfering with its

street railway upon Division street in the city of Spokane Falls, and the court below sustained a demurrer to the complaint, and dismissed the action.    To sustain its right to an injunction, the plaintiff showed that on the 16th day of June, 1886, the city of Spokane Falls, by an ordinance of that date, granted to its assignors the right to lay down, maintain and operate a street railroad upon certain streets, which were named, of which Division street was not one, but in building its road it laid down a portion of its track on Division street and used and operated the same as a portion of its system from some time in 1887 to the time of the commencement of the action, in 1890.    The track on Division street was laid under the direction of the superintendent of streets of the city, and was assessed for municipal taxes for each year thereafter.    On March 14, 1889, the Spokane Cable Railway Company obtained a similar franchise from the city for the construction, operation and maintenance of a cable railway or railways upon sundry streets, among which was Division street.    Among the terms of this second ordinance was one which provided that the grantee therein should have completed and in operation, within the city limits of Spokane Falls, at least two miles of road within six months from the passage of the ordinance, it being understood that the two miles to be completed as aforesaid might embrace that part of a road already commenced under the authority of a third ordinance running to J. M. Thompson, or his assigns, passed June 7, 1888.    It was alleged in the complaint that the Spokane Cable Railway Company had in part complied with the terms of its ordinance by the laying down of certain rails, one line of which was on the outside of each of the rails of plaintiff company's original track, this having been done by agreement between the two companies. Subsequently, and before the commencement of this action, the Spokane Cable Railway Company had sold and as-

signed to the appellant all of its rights under the ordinances granting to it authority to maintain a cable railway in Division street. The Spokane Cable Railway Company had also before this time complied with that portion of its ordinance requiring it to have at least two miles of its road completed within six months from the passage of the ordinance.

Under these circumstances, the city council, on the 18th day of June, 1890, passed a resolution requiring the plaintiff to tear up all of its rails on Division street and cease operating its line of street railway upon said street, and directed the respondent Swingler, as superintendent of streets, in case the command of the resolution was not obeyed, to tear up the rails. And the further allegation is made that this action of the city was taken at the instance of the respondent, the City Park Transit Company, which was claiming some right to construct a street railway on Division street upon the same portion of the street occupied by the appellant's railway, and that this action was to enable it to occupy the street with its railroad. The supplemental complaint showed that, notwithstanding a restraining order issued by the superior court, the respondents had disobeyed the order and destroyed a portion of the appellant's track; that the police officers of the city had protected the City Park Transit Company, its agents and servants, in laying down its track in place of appellant's thus torn up, and that other portions of the track of the appellant were still intact, the respondents, however, threatening to dispose of that in like manner.

In the face of a general demurrer we are required only to look at the complaint to see whether or not it states any ground of action upon its face. In our opinion there is at least one good cause stated.

1. It is a rule that obstructions of this kind acquire no legality from the fact that they are put in place and op-

erated without interference, and that mere time does not cure their illegal character; but in the case of a *quasi* public institution, like a railroad or street railroad, there are some exceptions to this rule. A municipal corporation should not be permitted to stand by and see large amounts of money invested in enterprises of this sort by persons who act under the mistaken view that they have legal authority. In this case the appellant had authority by ordinance to lay down a street railroad upon a number of streets; it mistook its rights and placed a part of its track in a place not designated in the ordinance. Technically, it had no right to put its track where it did, but the complaint shows that the municipal officers, from the mayor down, and including the superintendent of streets, knew that the track was being laid on Division street, and no objection was made, and the superintendent of streets himself directed the method of laying the track upon that street. Subsequently the road was put in operation, and continued to be used for upwards of two years, during which time the corporation made no objection, and from year to year levied and collected taxes upon this very property, and up to this time, so far as the complaint shows, no objection has been made to the operation of a street railroad upon Division street. The only interference which has been undertaken is not one for the purpose of clearing the street of an obstruction, but one to enable another street railroad company to lay down and maintain a track in the same place.

There are two cases which seem to sustain the view that such circumstances would estop a city from claiming that the right to maintain a street railroad on Division street was not properly authorized by it. See *Chicago, etc., R. R. Co. v. City of Joliet*, 79 Ill. 25; *Chicago, etc., R. R. Co. v. People*, 91 Ill. 251. It may be said that the time which had elapsed in those cases was far greater than in this case,

but it will be noticed that in both the payment of taxes was a ground upon which the estoppel was held to apply. The assessment of taxes is a deliberate and formal matter, and there is no reason why an estoppel should not grow out of one assessment as well as many.

The principal point urged by respondent under this head is, that the city charter provided that contracts should be made only by ordinance, and that, inasmuch as a street railroad franchise is in the nature of a contract, the right to maintain its track could arise in no other way than by express provision of an ordinance.  Charter of 1886, § 85. But it is evident from the reading of that entire section that the contracts there intended are those which would bind the city to the payment of money.  The general rule would, of course, be that franchises of this kind could not be acquired except by the action of the corporation, which must be taken by ordinance, but the statute in question does not prohibit the courts from declaring an estoppel against the city in other matters in the same manner that they would as against private persons.

2.  The appellant, we think, had succeeded to whatever rights the Spokane Cable Railway Company had under ordinance numbered 254, which authorized the maintenance of a cable railway on Division street.  But it is said, by the respondents, that the rails laid by the latter company were only a sham, and intended to preëmpt the right to maintain a railroad in that place without a compliance with the ordinance; that is, that it was endeavoring by laying rails which could only be used for a horse railroad to keep itself in a position to take advantage of its franchise whenever it saw fit.  The weakness of this objection is, that the complaint alleges that the Spokane Cable Railway Company had complied with the only absolute condition there was in the ordinance, and had in operation two miles or more of cable railway within six months from the date of

the ordinance. And there are further allegations going to show that the laying down of the rails, as they were laid, was for the purpose of indicating the future intention of the company to occupy the street, and, as quickly as was reasonably possible, to change the horse railroad into a cable railroad.

But even if these allegations were not a sufficient bar to the city's action, the mere fact that the grantee of a franchise to lay and maintain a cable railway should lay down a street railway not adapted to the use of a cable, but only adapted to use by means of horses, would not constitute the horse railway a nuisance which could be abated by the municipal corporation at its pleasure. In such a case the only proper course would be for the city to take such proceedings as would result in compelling the operation of the road by cable instead of by horses. A franchise of this kind is a contract which it does not lie in the power of either party to abrogate by such summary measures as were taken in this case.

3. The charter of the city of Spokane, § 14, authorized it "to cause any nuisance to be abated." It may be conceded that this clause of the charter would permit the tearing up of a street railroad track in the manner adopted in this case, if the city had put itself in a position to do so. It was held by this court in *Baxter v. Seattle*, 3 Wash. 352 (28 Pac. Rep. 537), that the provisions authorizing a city to prohibit the erection within any prescribed limits of any building constructed of other materials than brick, mortar, stone and iron, and to provide for the removal of the same, were sufficient to justify a general ordinance prohibiting the erection of such buildings, and to authorize their summary removal by the street commissioner under the direction of the council; but in that case there was an ordinance declaring such structures to be nuisances, and that they might be thus removed. But in this case, so far as the

complaint shows, there appears to have been no ordinance at all.    The city had not acted in the matter.    There was a resolution passed by the council, but that resolution was a mere special direction in this particular case.    The law contemplates that in all such cases there shall be a general ordinance which shall be a law of the city which it is bound to follow as much as the people are bound to obey.    In the absence of an ordinance regulating such matters the city should have resorted to legal proceedings, and not taken in its own hands by force the execution of the decree against a party who had no legal notice of the pendency of the matter.    It is very questionable whether, in any such case, where there is a doubt as to whether or not there may not be existing rights in the person whose property is sought to be destroyed, the municipal corporation should proceed with its destruction without resort to a tribunal, which may determine the right of the matter.    This was the course taken in *Moore v. Walla Walla*, 2 Wash. T. 184 (2 Pac. Rep. 187).    While a well constructed street railroad may be a technical nuisance, if unauthorized, it is not dangerous to either life, health or property, and so long as the courts are open to the determination of such controversies, there is no call for violence or any manner of arbitrary or oppressive action.

Judgment reversed, and cause remanded, with direction to overrule the demurrer.

DUNBAR, C. J., and HOYT and ANDERS, JJ., concur.