ALLEN, Acting Chief Judge.
This is an appeal from a final decree in a taxpayer’s suit, entered September 26, 1957. Hollywood, Inc. filed the suit against Broward County and others, seeking rescission of the purchase by the county of certain real estate. The complaint was dismissed and plaintiff appealed. The Supreme Court of Florida reversed the chancellor upon the general ground that the complaint stated a cause of action. After reinstatement, the chancellor entered the decree presently involved, dismissing the cause upon the general ground that the requirements of the Supreme Court’s decision, above, had been fulfilled. Plaintiff appeals.
The complaint charged that the payment plan adopted by the Board of County Commissioners on September 21, 1954 was in violation of Section 6, Article IX, of the Florida Constitution F.S.A. Such plan provided for the purchase of certain property for a recreational beach for the total purchase price of $1,600,000, payable $160,000 in cash, and $1,440,000 in annual installments of $250,000 each collected over a period of years from ad valorem tax revenues. The complaint prayed for a decree declaring the transaction to be invalid, for a rescission, and that the contracting parties be placed in status quo ante.
As mentioned above, the chancellor had originally dismissed the complaint and, on appeal taken by plaintiff, the Supreme Court reversed the chancellor, holding that the planned method of financing was, without the approving vote of the freeholders, prohibited by Section 6, Article IX of the Constitution. After the mandate of the Supreme Court went down, a special freeholders’ bond election, which had been called to ratify the deferred payment plan as proposed by the Board of County Commissioners, was held on November 6, 1956. The election failed due to the failure of a sufficient number of qualified electors to participate in the election, although a majority of those participating approved the plan.
*229 On December 17, 1956, the plaintiff filed a supplemental complaint setting forth the acts and conduct of the defendant Commissioners occurring since the filing of the original complaint; and in effect, charging that the constitutional requirements could not be satisfied by the expedient of ordering a special freeholders bond election for the purpose of procuring a ratification of the financing plan already declared by the Supreme Court to be unlawful in its inception. Such charge was based on the contention that the constitutional provision required prior approval of the purchase plan by which the indebtedness was created.
The plaintiff filed a motion for summary final decree in which the chancellor entered an order that the defenses asserted on behalf of the defendants were wholly insufficient as a matter of law, but the chancellor concluded that this did not require the entry of a final decree or call for a final determination, the court saying:
“The above decision, however, does not dispose of this controversy, that is, require a final decree of rescission. The Supreme Court concluded its opinion with the expression that the complaint presents a cause of action to compel a recission, unless and until the present deferred payment plan has been approved under the provisions of Section 6, Article IX, of the Constitution, or unless some other payment plan is arranged, and approved under the Constitution.”
Subsequent to the above order, the purchase plan was again submitted to the freeholders of Broward County on June 25, 1957, with the result that it was ratified by a substantial majority of the freeholders. A final hearing was had before the court on September 5, 1957, resulting in the final decree in favor of the appellees on September 26, 1957, which final decree was appealed to this court.
In the former appeal of this case, Hollywood, Inc., v. Broward County, Fla.1956, 90 So.2d 47, 51, the Supreme Court of Florida, in an opinion by Associate Justice Carroll which recited the method of purchase set up by the County Commissioners, held that the plan of financing by which the county was to make the payments for the property was one which necessarily involved pledging the general credit of the county over a period of years.' The Court then held that this obligation violated the intent of the provisions of Section 6, Article IX of the Constitution, which granted power to issue bonds, other than refunding bonds, only after an election had been called and approval had been given by a majority of the votes cast, in which election a majority of the freeholders who were qualified electors participated. The Court concluded its opinion by saying:
“The County was given express authority and power to purchase the lands. The propriety of the purchase and the desirability of the particular property for the public purposes and uses intended for it were questions for the administrative determination of the County Commission. It is not the acquisition of the property, but the plan chosen to pay for it, which is claimed to infringe a constitutional requirement.
“It was error to dismiss the suit. The complaint presents a cause of action to compel a rescission, unless and until the present deferred payment plan has been approved under the provisions of Section 6 of Article IX of the Constitution, or unless some other payment plan is arranged, and approved under; the Constitution.
“Reversed, and remanded for further proceedings.”
The lower court concluded that the effect of the foregoing opinion was to authorize a vote in the future, under the provisions of Section 6 of Article IX of the Constitution, on the payment plan which was the subject matter of the appeal then before the Supreme Court, and that, upon su.ch a vote having been taken and the approval *230 thereof made by the proper majority of freeholders of Broward County, such a payment plan was effectively validated pursuant to the Supreme Court’s opinion.
It is the opinion of this court that the conclusion of the circuit judge was correct. We approve the decree and the able opinion on the question involved by 'Circuit Judge Warren, from which we quote:
“The language seems perfectly plain —the complaint presents a cause of action to compel a rescission, unless and until the present deferred.payment plan has been approved under the constitution, that is, by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in the county shall participate. At the time the above was written, the present deferred payment plan was before the court. The County has since complied with the decision of the court by having the deferred payment plan approved by the freeholders at an election held June 25, 1957.
“The plaintiff contends that the constitutional requirement that a county may issue bonds only after the same have been approved by the freeholders precludes approval of any other than proposed bonds; that such approval must operate in futuro and not ex post facto.
“In 43 Am.Jur., Public Securities and Obligations, section 258, it is stated that ‘an issue of bonds unauthorized because the question of such was not submitted to a vote of the electors of a subdivision cannot be ratified by the municipal agency issuing them, however, for the ratification can be only in the mode prescribed by statute for the original issue — by submitting the question of issue to a vote of the electors and a favorable vote by them,’ and there was cited the case of Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178, wherein it was con-' eluded that ‘no ratification of the subscription to the Mississippi River Railroad Company, or of the bonds issued for its payment, could be made by the county court, subsequently to the new constitution of Tennessee, without the previous assent of three-fourths of the voters of the county, which has never been given. * * * It is unnecessary to pursue this subject further. We are satisfied that none of the positions taken by the plaintiff can be sustained. The original invalidity of the acts of the commissioners has never been subsequently cured. * * *’
“In Volume 53 L.R.A. [N.S.], page 1032, 1915A, there appears this statement: ‘Where general power to contract or approve contracts is vested in the electors residing within the limits of a public corporation, they may ratify an unauthorized contract made in behalf of the corporation by any officer thereof, or any official board, where the contract is within the scope of their delegated powers.’
“In McQuillin-Municipal Corporations, 3rd Edition, Vol. 15, Section 39.37, page 119 it is said: ‘A debt invalid for any reason when entered into, may be ratified, in a proper case, by a subsequent vote of the people.’ There is cited the case of State ex rel. City of Tekamah v. Marsh, 108 Neb. 835, 189 N.W. 381, in which it was held, ‘Had a vote of the people been taken in advance, there would be no question of the legality of the debt, and we have no doubt of the power of the people at an election regularly called to ratify an act which it might have authorized in the first instance.’
“It was held in the case of Bell v. Burgess, etc. of Borough of Waynesboro, 1900 [195 Pa. 299], 45 A. 930, that the act of borough authorities in contracting indebtedness in excess of the 2 per cent limit without the express consent of the electors was rati *231 fied by a vote of the electors authorizing such authorities to create an indebtedness to liquidate such irregularly contracted indebtedness.
“The case of Jones v. City of Centraba, 1930 [157 Wash. 194], 289 P. 3, is quite similar to the case at bar. A special election was held illegal, after the city had entered into contracts and expended money with the purpose of constructing a hydroelectric producing plant. A second election was called, in the nature of ratification of the plan of purchase, acquisition and construction of the plant and of the contracts, which election was favorable. Because of the length and thoroughness of the opinion, it is difficult to select all of the portions applicable to the case at bar, however, the court [289 P.] at page 6, said:
“ ‘It is, of course, true, as contended by appellant, that any expenditures of money by respondent commissioners prior to the election of September 30, 1929, were without warrant of law, as this court has held that the first election was void because of insufficient notice. The law requires that, before the officers of any city shall enter upon the purchase or construction of such a power plant as that here in question, the proposed action shall be submitted to the voters of the city for ratification or rej ection.’
“And [289 P.] at page 9:
“ ‘In the case at bar, the difficulty arises not from any want of power on the part of the voters of the city of Centraba to authorize the acquisition of a power plant, but from failure to comply with the restrictions imposed “by the Legislature with reference to the mode of exercising such power.” It must always be remembered that the people, by a majority vote cast at a valid election, have authority to authorize precisely the acts which were, in this instance, performed by respondent city commissioners. The commissioners, in carrying out the mandate of the voters, are simply the agents of the people. The authority comes from the people and not from the commissioners. Contracts signed pursuant to such mandate are contracts of the city thereunto authorized by the electors, and not .the contracts of the city acting merely by and through its city commission. In the exercise of these powers, both the city acting through its electors and, on the other hand, acting through its governmental machinery as established by its charter, are bound by the Constitution and the laws of the state enacted pursuant thereto, and, as in the case at bar, where the procedure followed has not been in accordance with law, proceedings had thereunder must be held void, but this nowise precludes the ultimate municipal authority, wherever that may rest under the law in any particular case, from again exercising in a lawful manner its authority for the purpose of correcting errors and mistakes due, not to a basic want of power, but to defective procedure which has, in some respects, caused the municipal machinery to cease to function.’
“And [289 P.] at page 10:
“ ‘In the case at bar, while the city commissioners had no power in law to act under the void election, the authority of the city commissioners must not be confused with the authority of the voters of the city who did have, under the law, complete power and authority to direct the city officials to proceed to erect the power plant, which is the subject matter of the litigation now before us.’
“Finally [289 P.] at page 12, the court said:
“ ‘When consistent with a reasonable construction of applicable laws, the action of the voters of a municipality, validating or ratifying prior unlawful acts of the municipal officials perform *232 ■ed either by mandate of the voters or through the regularly chosen officers ■of the corporation should be upheld (citing cases).’
“In the present case, it is remembered that our supreme court held that ‘the County was given express authority and power to purchase the lands. * * * It is not the acquisition of the property, but the plan chosen to pay for it, which is claimed to infringe a constitutional requirement. * * * The complaint presents a cause of action to compel a rescission, unless and until the present deferred payment plan has been approved under the provisions of Section 6 of Article IX of the Constitution * * *.’
“From an examination of the special acts mentioned in the case of State v. City of Port St. Joe [Fla.], 47 So.2d 584, and from excerpts from the briefs •of appellant and appellee therein (Supreme Court File 21.146), there is indicated that invalid promissory notes of the city of Port St. Joe were converted into a valid bond at a freeholders election held more than ten years ■later.
“Also, see the case of Wehage v. Palm Beach County (filed in the circuit court September 13, 1949), involving a public beach purchased by the county commissioners of Palm Beach County subject to a mortgage which was paid off by the county out of successive budgets. No approving vote of a majority of the freeholders was sought. The lower court observing that a tax for the payment of the obligation long since had been levied and paid by plaintiffs and other taxpayers without protest and the funds thus raised used to discharge the mortgage indebtedness, held that it was too late for taxpayers to attack the validity of the county’s title thus acquired. Petition for writ of certiorari was taken and the petition was denied ([Fla.], 48 £a.2d 304).
“From the above it is seen that the county had express authority and power to purchase the land, and that the county has met the constitutional requirement as set out by the supreme court that the deferred payment plan be approved by the freeholders, and that there is full authority for the freeholders to ratify the plan of purchase. “Upon consideration of the foregoing, it is Ordered, Adjudged and Decreed that the temporary injunction entered herein on December 17, 1956, is dissolved and this cause is dismissed with prejudice.”
We do not deem it necessary to add anything to the opinion of the circuit judge. His decision should be and is affirmed.
Affirmed.
SHANNON, J., and GERALD, LYNN, Associate Judge, concur.