STURGIS, Judge.
This is an appeal from a final judgment in a condemnation proceeding awarding $43,500.00 as compensation for the taking of a parcel of property identified as SRD #100.1, 100.2, 100.3. Included in said award is an item of $5,500.00 for the loss of a business conducted thereon by appellees Albert Raphael and Florence Raphael, his wife, hereinafter referred to as “Raphael,” who were tenants of the fee simple owners, E. A. Summerall et ux, hereinafter referred to as “Summerall,” *138 and who also owned the improvements on the land. Raphael’s business was a small general store, of more than five years standing when the property was taken by the State Road Department of Florida, the appellant-petitioner. The Raphaels were made parties defendant because of their interest under said lease, which by its terms was to expire January 4, 1966.
Raphael’s answer alleged, inter alia,
“ * * * The Defendants’ interest in the aforedescribed property has been damaged and Defendant Lessees claim compensation as provided for in the Florida Statutes including, but not limited to, damages suffered by Defendant Lessees to their established business of more than five (5) years standing, located on the -lands sought to be condemned and described aforesaid in said Lease Agreement, and called ‘The Golden Rule Grocery’. Defendant Lessees also claim compensation for * * * reasonable costs of moving Defendant Lessees’ personal property from the premises, * *
On May 18, 1964, during the trial of the cause, a stipulation between Summerall and the State Road Department of Florida was recognized to exist, in accordance with the following colloquy between counsel for petitioner and the trial judge:
MR. DANIELS (of counsel for petitioner) : “One. It is stipulated and I wish the jury would take this down, stipulated that the value of the property taken excluding the business is $38,000, so that any amount awarded for the business would be in addition to that $38,000.”
THE COURT: “When you say the., property taken, you are saying the land?”
MR. DANIELS: “The land, the buildings.”
THE COURT: “The appurtenances ■including the lease?”
MR. DANIELS: “Yes, sir.”
THE COURT: “The value of the land, the appurtenances, and the lease is $38,000. That is what they have stipulated to.”
On the following day Summerall and Raphael filed a stipulation agreeing that just compensation for the destruction of Raphael’s “leasehold interest” was $750.00, and at a post-trial hearing it was stipulated that Raphael should receive that sum out of the $38,000.00 referred to in the stipulation between petitioner and Summerall, who did not participate in the trial but relied upon said stipulation.
At the trial Raphael was allowed to adduce testimony over petitioner’s objection as to the reasonable fair market value of his business which was destroyed by petitioner’s taking, under the power of eminent domain, of fee simple title to the land on which such business was conducted.
The court informed the jury of said stipulation fixing the fair market value of the land, appurtenances and lease at $38,-000.00, and instructed the jury, inter alia) that should it find from the evidence that the business operated by Raphael, taking into consideration the length of the unexpired term of the lease and other relevant factors, had a fair market value apart from the value of the land and lease, it should ascertain such value and ■ add same to the said stipulated value of the land, appurtenances and leasehold interest and return a verdict for such total sum. The jury returned a verdict for $43,500.00, thus awarding $5,500.00 for such business damages, and petitioner moved for a new trial on the ground, inter alia, that the court erred in ruling and instructing the jury, as aforesaid, that the measure of business damage was fair inarket value. In its exhaustive order denying the motion for a new trial the trial court concluded that it was error to so instruct the jury, but that it had no harmful effect upon the petitioner and only prejudiced Raphael who by inac *139 tion had waived any adverse effect occasioned thereby.
It also appears that in the course of the trial • the court held, over petitioner’s objection, that in determining the compensation to be made for the entire taking, the jury was entitled to consider the value of the damage occasioned by the destruction of the business of more than five years standing owned and operated by the lessee Raphael, and this ruling was assigned as error by the motion for a new trial and is an issue on this appeal. The order denying said motion quotes that part of Section 73.10(4), Florida Statutes,.. F.S.A., which provides:'
“ * * * Provided, however, that when' the suit is by the "state road department * * * for'the Condemnation of a right of way, and" the effect of the taking of the property involved may damage or, destroy ^.n established business of more than five years standing, owned by the party whose lands are being so taken, located, upon adjoining lands owned or held by such party, the jury shall ■ consider the -probable effect .‡ •* ■* ■ and assess in addition to the amount to be awarded for the taking, the probable damages to such business * * (Emphasis supplied.)
and the order makes the following observations touching upon the court’s disposition of the motion:
“At the trial this Court ruled that although the subject business was located entirely upon the land taken, to-wit: Notwithstanding that the business was not ‘located upon adjoining lands owned or held by such party’ nevertheless the damage or destruction of the lessees’ established business of more than five years standing fell within the coverage of F.S. 73.10(4). In so ruling this Court found that the Appellate Court, in White [State Road Department v. White, 148 So.2d 32 (Fla.App.1963)] had obviously expanded the statute. This Court now concedes that the language which is attributed to the Appellate Court in White was not in fact the language of that Court but was instead a portion of thb-language of a Wyoming decision which was quoted in White, and preceded by a stateriient that the Wyoming decision ‘was based on a statute unlike the Florida statute quoted above [73.10(4)] and the facts of the case are dissimilar to those involved in the instant proceeding * * A careful reading of White reveals that it did not expand the subject statute but simply held that a lessee is, for the purpose of the statute, an owner. Such holding was specifically affirmed by the Supreme Court of Florida in White on Certiorari.
“Upon reconsideration this Court now finds that the clear and unambiguous words of. Florida Statute 73.10(4) require the holding that such statute applies only to businesses ‘located upon adjoining lands owned or held by such party,’ and therefore does not apply to businesses located entirely upon the lands being taken. To construe the plain words of the statute in any other manner would be to engraft an amendment thereon which is the sole province of the legislature and not of the Cóurts.
“However, such holding that the statute does not apply does not of necessity require the inference or holding that damage to a business located upon, land which is being condemned in its entirety is not compensable. Neither can it be said, upon a careful reading of Guarria [Guarria v. State Road Department of Florida, 117 So.2d 5 (Fla.App.1960)], that such was the holding of that decision. It is in fact difficult to know exactly what the holding of that decision was. The Court phrased the issue before it thusly: ‘Is the destruction or damage to a business of more than five years *140 standing compensable under Section 73.10(4), Fla.Stat., F.S.A., -where the land upon which the business is located is being condemned in its entirety?’ (Emphasis added) But without purporting to answer that question, the Court stated, 'we do not consider the applicable statutes to require the award of damages for a going business of five years or more to be severable from the damages to be awarded for the condemnation of the real property where the effect of the condemnation is to destroy the business by reason of an entire taking of both the business and the land.’ (Emphasis added) Thus it is seen that the Court in Guar-na did not hold that damage to the business was not compensable but only that it was not severable under the statutes.
“Section 29 of Article XVI of the Florida Constitution, F.S.A., reads as follows:
‘No private property, nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefore shall be first made to the owner, * * sM
“Section 12 of the Declaration of Rights provides, inter alia, as follows:
‘ * * * nor shall private property be taken without just compensation * * *;
“The Fifth Amendment of the Constitution of the United States contains the following language:
‘nor shall private property be taken for public use, without just compensation.’
“In DuPree [Jacksonville Expressway Authority v. Henry G. DuPree Co., 108 So.2d 289 [69 A.L.R.2d 1445] (Fla.1958)], the Supreme Court of Florida, without aid of statute, held reasonable costs of moving to be com-pensable simply by ascribing the plain and logical meaning to the clear words of the constitution. The Court stated:
' * * * We feel our constitutional provision for full compensation requires that the courts determine the value of the property by taking into account all facts and circumstances which bear a reasonable relationship to the loss occasioned the owner by virtue of the taking of his property under the right of eminent domain.’ (Page 291)
“The Court also quoted with approval from Housing Authority of Savannah v. Savannah Iron & Wire Works, Inc., 91 Ga.App. 881, 87 S.E. 2nd 671, as follows:
‘The lessee is entitled to just and adequate compensation for his property; that is, the value of the property to him, not its value to the housing authority. The measure of damages for property taken by the right of eminent domain, being compensatory in its nature, is the loss sustained by the owner, taking into consideration all relevant factors. * * * ’
“The Supreme Court of Florida further stated in DuPree:
‘The theory and spirit of such a guarantee require a practical attempt to make the owner whole.’
“In reading White, it is not clear whether the business there involved was located on the land being taken by eminent domain or whether it was located on adjoining lands. The Court stated the question thusly:
‘The instant appeal is concerned primarily with the question whether § 73.10(4) Fla.Stat., F.S.A., permits the recovery of business damages by the lessee of land being taken by condemnation.’
*141 “The Court, in its opinion, did state:
‘Turning to the law on the subject of ownership interest by a lessee we find that * * * it is well established that a valid lease for a term of years is a conveyance of an interest in land. * * * In the law of eminent domain, a lessee for years under a written lease is an owner of property in the constitutional sense, and is entitled to share in the compensation when all or a part of the leased property is taken during the period of the lease. * * *.’ (Italics added.)
“Since it is now well established that the lessee is an ‘owner’, and it being clear that the constitutional guarantees require that where property is taken by eminent domain the owner is to be made whole, how can such be accomplished if the jury, who is the sole arbiter as to evaluation, is not allowed to consider the enhancement of the value of land as a result of the operation thereon of a going business? If the value of the lessee’s entire interest is not to be considered by the Court then how may the Court apportion between the lessee and the fee owner the compensation awarded by the jury, as is required by F.S. 73.12? A fortiori, if the value of the enhancement of the fee as a result of the business located thereon is considered by the Court in apportioning the award but is not allowed to be considered by the jury in arriving at the award, then the fee owner must receive less, as his apportioned share of the jury award, than that to which he would be otherwise entitled, to-wit: Less than the fair market value of the fee, which would clearly be unconstitutional under the Constitution of the State of Florida and of the United States of America.
“Accordingly, it is the holding of this Court that, without the aid of Florida Statute 73.10(4), but by application of the provisions of the Constitution as construed by DuPree, evidence of the value of a going business which is destroyed as a result of the taking by eminent domain of the entire parcel of land upon which such business is located and operated, is properly to be submitted to the jury. Such a holding is not contrary to the holdings of any of the Appellate Court cases hereinabove cited. In City of Tampa [City of Tampa v. Texas Co., 107 So.2d 216 (Fla.App.1958)] a peculiar factual situation was presented. * * The Court there simply held, (in addition to a holding regarding ‘consequential damages’ to a fee owner) that ‘defendant landowners may not claim loss of profits because of the interruption of their lessees’ businesses.’ (107 So.2d 227) Neither the facts nor the holding of City of Tampa are applicable to the case at bar. In Guarria the Court held, upon considering 73.10(4) that such statute does not require the award of damages for a going business to be severable from the damages to be awarded for the condemnation of the real property where the effect of the condemnation is to destroy the business by reason of an entire taking of both the business and the land. Such holding that business damages are not ‘severable’ apparently means that evidence regarding value of the destroyed business should be adduced as an integral part of the evidence touching upon the value of the property taken, taking into consideration all of the component parts of the condemned property, rather than by adducing testimony separately or ‘severally’ as to the value of the land without the business and then as to the value of the business detached from the land. Such an interpretation gives meaning to the holding and is in line with holdings of other Courts of other jurisdictions which have considered similar related problems.
*142 “In Gloucester Water-Supply Co. v. City of Gloucester, 179 Mass. 365, 60 N.E. 977, 981 (1901), which involved a direct purchase of a water plant by a municipality as authorized by a state statute, in allowing going concern value in addition to reproduction cost, the court said:
‘ * * * It is plain that the real commercial market value of the property of the water company is, or may be, in fact, greater than “the cost of reproduction, less depreciation, of the different features of the physical plant.” Take, for example, a manufacturing plant. Suppose one manufacturing plant has been established for some 10 years, and is doing a good business, and is sold as a going concern. It will sell for more on the market than a similar plant reproduced physically would sell for immediately on its completion, before it had acquired any business. National Water Works of New York v. Kansas City, 10 C.C.A. 653, 62 Fed. 853 [27 L.R.A. 827], 27 U.S.App. 165 * * *. It is plain that the element of value which comes from the fact that the property is sold as a going concern, in which case it has, or may have, in fact, a greater market value than the same property reproduced in its physical features, :.is not excluded from consideration by that provision-of the statute. It is also plain that the commissioners, in allowing the $75,000 allowed by them in addition to the cost of reproduction, less depreciation, of the plant in its physical features, did not go beyond this. * * * >
“In [City of] Omaha v. Omaha Water Co., 218 U.S. 180, 202 [30 S.Ct. 615, 54 L.Ed. 991] (1910), which in-, volved a purchase by a municipality of a water supply system, the Supreme Court sustained the allowance for 'going value’ as an element of reproduction cost,'and said:
‘ * * * That there is a difference between even the cost of duplication, less depreciation, of the elements making up the water company plant, and the commercial value of the business as a going concern, is evident. (Citing National Water Works v. Kansas City, 62 Fed.Rep. 853; Gloucester Water Co. v. Gloucester, 60 N.E. 977)’
“In Appleton Water Works Co. v. Railroad Commission, 154 Wis. 121, 142 N.W. 476, 484 [47 L.R.A.,N.S., 770] (1913), which involved the fixing of compensation for the purchase by a municipality of a water works plant, in discussing the allowance of ‘going' value’ in computing reproduction cost, -’ the court said:
' * * * it has been thought that going value might be measured by ascertaining as nearly as possible the cost of reproducing the existing busi- ■ ness, sometimes called the “unrequited outlay”, i. e., the amount of the: deficits which would be incurred added to the promotion expenses necessary to be incurred up to the time. the new plant would have a business equal to that of the present plant; or, again, by ascertaining the actual unrequited outlay in building up the present business; or, again, by ascer-, taining the average time and propor-> tional outlay actually incurred in building up the business of a number of concerns of like character, and thus establishing what may be called a “curve” which can be used in determining the time and outlay which would be reasonably necessary in the instant case. * * * The actual original cost of establishing the business of the existing plant is very clearly unsatisfactory * * * as a test of going value, because it may have been wasteful and extravagant,; *143 and * * * it is well known that the building up of the business of a water plant 30 years ago, before sewerage systems had become common * * * was a much slower process than at the present time * * *. Estimates of cost of working up a business -under present conditions approach nearer to the requirements of a test, but they must always remain estimates, however carefully they be conducted; they cannot be called facts.’
“Re Indianapolis Water Co., P.U.R. Ann.1923D, 449, 494, 502, 503, contains a table of valuation cases showing allowances for ‘going concern value’ by various courts and commissions, in which the percentage ratio of ‘going value’ to cost of reproduction ranges from a low of 7.5 per cent to a high of 25 per cent. In considering 'going value’ as an element of value to be allowed over and above physical value, the Commission said: (p. 494)
‘A good property has an intangible value or going concern value over and above the value of the component parts of the physical property. Numerous theories about going value and about the method of computing the amount of it are available in the text books, and the long line of court and Commission decisions on the subject. In this case, the cost of the physical property can be approximated, the cost of reproducing it on various bases is in evidence, and it is not difficult to arrive at a fairly correct sum to represent the physical or bare bones value. Any reasonable man with a knowledge of this property and the local conditions would unhesitatingly affirm that it had a value far in excess of the value of the pipe, buildings, grounds and machinery. Consider its earning power with low rates, the business it has attached, its fine public relations, its credit, the nature of the city and the certainty of large future growth, the way the property is--planned and is being extended with the future needs of the city in view, its operating efficiency and standard of maintenance, its desirability as compared with similar properties in other cities and with other utilities of comparable size in this city. These things make up an element of value that is actual and not speculative. It would be considered by a buyer or seller of the property or by a buyer or seller of its securities.’
“In Gross [Gross v. Ruskin, 133 So.2d 759 (Fla.App.1961)] the opinion is short and there is no way of knowing whether the case involved the destruction of a business by virtue of an entire taking or a damage to a business located upon adjacent property. The case apparently arose from the lessee’s dissatisfaction with the Court’s apportionment of the jury award. The Appellate Court stated:
‘The additional damages claimed were for relocation, depreciation and loss of business. Such damages are not recoverable by a lessee.’ (Italics added)
However, in White On Certiorari the Supreme Court of Florida stated with reference to Gross:
‘The reported opinion in the Gross case does not disclose the facts but the statement that (in condemnation) damages for loss of business “are not recoverable by a lessee” is at odds with the language of the District Court of Appeal, Second District, in the opinion herein. * * *
‘We have concluded the District Court of Appeal [Second District in White] properly held in this cause that a lessee for a term of years is, for the purpose of the statute [F.S. 73.10(4)], an owner and, as such, is entitled to recover business damages *144 under the provisions thereof, any-holding of Gross, supra, to the contrary notwithstanding.’
“Having decided that in order for the owner of property, including the lessee, to receive full and just compensation for the property taken it is necessary to allow the jury to consider evidence as to damages resulting from the destruction of a going business located entirely upon the land taken, the next issue to be resolved is the manner and method of adducing such testimony. There are two obvious methods:
“FIRST: Adduce evidence as to the value of the entire property taken as an integrated whole, to-wit: The value of the land, improvements and the business. This method would, of necessity, allow evidence as to the type of business, its duration, its reasonable future prospects, the unexpired term of the lease, whether or not it was making a profit and the amount thereof, and all other factors which would be considered by a willing purchaser negotiating with a willing seller for the purchase of the entire integrated property being taken, neither being under compulsion.
“SECOND: Adduce evidence as to the value of the essential component parts of the entire property being taken, to-wit: Evidence as to the value of the naked land, plus the value of the improvements and plus further the value of the business operated thereon, including the various aspects incident to such business as enumerated in the first method above set forth.
“It might be charged that the difference between the two methods is the difference between tweedle dee dee and tweedle dee dum. However, in Wingert v. Prince, 2 D.C.A., 123 So.2d 277, cited with approval in Rich v. Harper Neon Company, 2 D.C.A., 124 So.2d 750, it was held,
‘the compensation awarded by the jury shall be determined as a whole, irrespective of the interest of the various parties in such parcel. The Court upon appropriate petition shall determine the rights of any owners, [and] lessees * * * in respect to the compensation awarded to each owner by the verdict, and the method of apportionment among interested parties together with the disposition of any other matters arising from the taking.’ (Emphasis added.)
“It would appear logical that if the jury is to be called upon to determine the compensation as a whole, it would be preferable for the evidence to be submitted as an integrated whole and then explained, if the parties should so desire, by direct or cross examination with reference to the component parts, that is, it would appear that the First method above discussed should be employed. The application of such method would be in keeping with the holding in Wingert v. Prince, supra, and with what appears to be the holding in Guarria. It is also consistent with Orange State [Orange State Oil Co. v. Jacksonville Expressway Authority, 110 So.2d 687 (Fla.App.1959)], though there the Court was primarily interested in the proper measure of damages to be applied, rather than the method of their determination.
“The ultimate decision to be made in the case at bar is to determine whether, under the reasoning hereinabove set forth, error was committed which was prejudicial to the petitioner who is moving for a new trial. Having determined that evidence as to business damage is properly to be considered by the jury although the situation does not come under F.S. 73.10(4), which statute this Court admittedly erroneous *145 ly used as a guide, but it further appearing that the jury herein was not apprised of the existence of such statute, and was not instructed specifically with reference thereto, this Court is of the opinion that it did not commit harmful error in allowing the jury to consider the damage to the lessee’s business. Clearly the method herein-above indicated to be desirable for adducing the evidence, viz: as an integrated whole, was not used at the trial. However, in view of the fact that the parties stipulated as to the value of the naked land, appurtenances and lease, exclusive of the damage attributable to destruction of the business, there was no other possible way to get before the jury the evidence of the damage incident to destruction of the business except that employed. It is hardly to be urged that the Court should, if indeed it can, prevent the parties from stipulating to any pertinent facts or group of facts relevant to the issues, while reserving for jury determination, upon appropriate evidence, any facts which are not included in the stipulation.
“It is clear that this Court erred in instructing the jury as to the proper measure of damages by instructing them that they should determine the fair market value, rather than the ‘actual value, or value to the owner’, which was the measure laid down in Orange State. However, that error was to the advantage of, and not prejudicial to, the Petitioner, and the party to whom it could have been prejudicial, to-wit: the lessee, Raphael, has not, since the trial itself, raised such point by motion for new trial or otherwise.”
We are indebted to the learned trial judge for the painstaking review of the authorities and analysis of their effect upon the instant appeal, as made in the foregoing order denying the motion for new trial. It is obvious that the stipulation entered into between the petitioner and Summerall had no binding effect upon Raphael, nor did it operate to settle the issue made between the plaintiff and Raphael upon the pleadings. Although the trial court admits having erred in the particulars stated by the order denying a new trial, we agree that the error was not of such harmful nature as to warrant a new trial. It follows that the judgment appealed should be and it is
Affirmed.
WIGGINTON, Acting C. J., and CARROLL, DONALD, K., J., concur.